IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 13-0279-WS |
| ) | |
| CEDRIC HUNTER, ) | |
| ) | |
|     **Defendant.** ) | |

# ORDER

This matter comes before the Court on defendant Cedric Hunter's Motion to Suppress and Dismiss (doc. 16). The Motion has been briefed and is ripe for disposition.[1]

## I. Relevant Background.

A two-count Indictment (doc. 1) alleges that Hunter knowingly received, possessed, concealed, stored and/or disposed of stolen firearms, in violation of 18 U.S.C. § 922(j), on a pair of occasions in November 2013. Specifically, Count One charges that Hunter received, possessed, concealed and stored a stolen Glock 9mm pistol, Model-26, serial number UFK270, on or about November 21, 2013. Count Two charges that Hunter received, possessed, concealed, stored and disposed of a stolen .40 caliber Glock pistol, Model M-22, serial number VWW906, on or about November 20, 2013.

---

[1] The Court takes the Motion to Suppress under submission without an evidentiary hearing. It is well-settled that "[w]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (citation omitted). Hunter's Motion does not challenge the veracity of the facts alleged by the Government, but simply argues that those facts do not rise to the level of reasonable suspicion and/or probable cause required under the Fourth Amendment. No evidentiary hearing is necessary because the Motion turns on questions of law, rather than disputed issues of fact requiring resolution via evidentiary hearing. *See generally United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992) (stating that the "question of what amounts to probable cause is purely a question of law").

The underlying facts on which the Indictment is predicated, which are not disputed for purposes of the Motion to Suppress, are as follows: Just before 1:00 a.m. on November 21, 2013, Selma police officer John Taccone, who was on vehicular patrol in the downtown commercial area of Selma and accompanied by a trainee, observed Hunter emerging from an alley. Hunter was clad in dark clothing and white gloves, and was carrying a backpack. Officer Taccone was aware of reports of multiple recent burglaries of a jewelry store in the area, which crimes had reportedly been committed late at night by a person wearing dark clothing and white gloves. Perceiving that Hunter matched that description, Officer Taccone stopped his patrol vehicle, exited the car, and initiated questioning of Hunter as to where he was coming from and where he was going. Officer Taccone reported that Hunter appeared nervous and reluctant to comply, gave responses that did not make sense, and quickly became agitated. On that basis (and less than a minute after the encounter commenced), Officer Taccone indicated that he was going to pat down Hunter for weapons. Before Officer Taccone could actually begin the *Terry* pat, Hunter attempted to flee. In the ensuing struggle, both police officers fell to the ground with Hunter, at which time Officer Taccone observed a 9mm Glock handgun in Hunter's waistband. Hunter was arrested for the offenses of disorderly conduct and possession of a concealed weapon. After taking Hunter into custody, the officers identified the firearm as having been stolen during a burglary of the Central Alabama Farmers CO OP in May 2013. During an interview taken the following afternoon while he was in custody, Hunter admitted that he knew the 9mm Glock was stolen. Later that day, Hunter made bond and was released from Selma police custody.

A consensual search of Hunter's cell phone prior to his release alerted officers that, while in custody, Hunter had transmitted text messages to his girlfriend and others about recovering an unidentified item from his house and hiding it. For whatever reason, law enforcement officers did not realize the import of these messages until after Hunter had made bond. At that time, Selma Police Detective Willie Calhoun and ATF Special Agent David Perry visited Hunter's mother's residence to investigate this hidden item, based on suspicion that it might be another firearm stolen from the same victim during the same May 2013 burglary. The investigators arrived to find Hunter, his mother, and his girlfriend present at that residence. Based on safety concerns (including Hunter's behavior at the time of his previous arrest, suspicion that he might have access to another firearm at that location, and knowledge of prior incidents in which Hunter

-2-

had stolen or fired weapons), Detective Calhoun and Special Agent Perry placed Hunter in handcuffs before questioning his mother and girlfriend. These individuals readily admitted that Hunter's mother had discovered a pistol in her backyard after Hunter's arrest, and that Hunter's girlfriend had retrieved the firearm and hid it in the basement of her mother's house at Hunter's directive. Upon receipt of this information, the agents arrested Hunter and transported him to the Selma Police Station. A subsequent search of Hunter's girlfriend's house (with consent) revealed the .40 caliber Glock handgun, which was confirmed to have been stolen from the Central Alabama Farmers CO OP during the May 2013 burglary. Upon being Mirandized and interviewed, Hunter admitted that he had obtained both firearms from friends after the May 2013 burglary, and that he had hidden the .40 caliber Glock behind the shed at his mother's house on November 20.

## II.     Analysis.

Defendant now seeks the suppression of both firearms and all evidence derived from same. As grounds for this Motion, Hunter advances the following arguments: (i) "[l]aw enforcement did not have reasonable suspicion to stop and detain Mr. Hunter" in the early morning hours of November 21, 2013; (ii) law enforcement lacked "probable cause to arrest him" at that time; (iii) "[l]aw enforcement also did not have reasonable suspicion to believe that Mr. Hunter was armed and presently dangerous to perform a pat down" on November 21; and (iv) "Mr. Hunter's detention and arrest on November 22, 2013 lacked reasonable suspicion and probable cause, respectively." (Doc. 16, at 4-5.) These contentions will be addressed in order.

### A.     *Legality of Initial Stop and Detention.*

As an initial matter, Hunter challenges the legality of his stop by Officer Taccone as Hunter emerged from the alley. Of course, "[t]he Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops … that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Nonetheless, pursuant to the landmark decision of *Terry v. Ohio*, the Fourth Amendment is not violated by "a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Valerio*, 718 F.3d 1321, 1324 (11th Cir. 2013) (citation omitted); *see also United States v. Williams*, 619 F.3d 1269, 1271 (11th Cir. 2010) ("where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot, the officer

may briefly stop the persons involved to confirm or dispel his suspicions") (citation and internal quotation marks omitted).  "To determine whether reasonable suspicion exi[s]ts, the court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (citations and internal marks omitted).

To the extent that Hunter challenges Officer Taccone's initial questioning on the street after Hunter emerged from a downtown Selma alley at nearly 1:00 a.m., such an objection is unfounded.  Indeed, "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (opining that "the officers' actions in approaching the four men late in the evening of February 6, 2009 and asking them questions did not implicate the Fourth Amendment at all"). Thus, Officer Taccone's actions of exiting his patrol vehicle, approaching Hunter, and asking him questions about where he had been and where he was going do not implicate the Fourth Amendment and cannot lend support to the Motion to Suppress.

Assuming that Officer Taccone's questioning of Hunter ripened into a detention prior to the officers' physical struggle as Hunter attempted to flee, defendant's argument still fails.  At the time of the *Terry* stop, Officer Taccone knew the following: (i) there had been a rash of late-night burglaries reported at a nearby jewelry store; (ii) those burglaries had reportedly been committed by a person wearing dark clothing and light-colored gloves; (iii) Hunter was emerging from an alley after midnight in a commercial area of town in which all businesses were either closed or otherwise locked up; (iv) Hunter was wearing dark clothing (with a hoodie pulled over his head) and white gloves, and was carrying a backpack; (v) Hunter's answers to Officer Taccone's questions did not make sense, and (vi) Hunter appeared nervous and quickly became agitated.  Under the totality of these and other circumstances, Officer Taccone plainly had reasonable, articulable suspicion to believe that criminal activity was afoot, so as to justify a *Terry* stop of Hunter.

### B. *Legality of Arrest in Early Morning Hours of November 21.*

Next, Hunter asserts that law enforcement officers lacked "probable cause to arrest him on November 21, 2013." (Doc. 16, at 2.)  This argument may be quickly dispatched.  Defendant is correct, of course, that "an arrest made without probable cause violates the Fourth Amendment." *Wilkerson v. Seymour*, 736 F.3d 974, 977 (11th Cir. 2013) (citation omitted).

"This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013) (citation omitted). The uncontested facts here reflect that the officers arrested Hunter only after he actively resisted and attempted to flee, and after they observed a firearm in his waistband. Those facts would cause a prudent person to believe that Hunter had committed the Alabama offenses of disorderly conduct (in violation of Ala. Code § 13A-11-7) and possession of a concealed weapon (in violation of Ala. Code § 13A-11-50); therefore, Hunter's arrest was plainly supported by probable cause.

### C. Legality of *Terry* Pat on November 21.

The third component of Hunter's Motion to Suppress is his contention that Officer Taccone "did not have reasonable suspicion to believe that Mr. Hunter was armed and presently dangerous to perform a pat down." (Doc. 16, at 5.) Uncontested facts reveal otherwise.

"Once an officer has stopped an individual, he may conduct a pat-down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened." *United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012) (citation omitted). "An officer who has a reasonable suspicion that an individual is engaged in illegal activity and is armed with a concealed weapon is justified in conducting a limited search for weapons." *Hunter*, 291 F.3d at 1307. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Griffin*, 696 F.3d at 1359 (citations omitted). In addressing this question, "[g]reat deference is given to the judgment of trained law enforcement officers on the scene." *Id.* at 1360.

The totality of the circumstances confronting Officer Taccone included the facts that it was late at night (nearly 1:00 a.m.) in a commercial area of downtown Selma in which all businesses were closed, that Hunter matched the description of a person responsible for burglaries of a nearby jewelry store, that Hunter's demeanor was agitated and verbally combative, that Hunter's answers to Officer Taccone's questions were not satisfactory (and therefore required further investigation), and that Officer Taccone was accompanied only by a trainee (and not an experienced officer). Under these circumstances, and in light of the deference to which Officer Taccone's judgment on the scene is entitled, the Court concludes that the decision to conduct a *Terry* pat was supported by reasonable belief that Officer Taccone's

safety may be threatened. Even if it were not, the question is academic. After all, the record shows that Hunter attempted to flee before a *Terry* pat could be performed on his person, and that the subject firearm was discovered during the ensuing struggle. Simply put, there was not a patdown of Hunter's person for weapons that culminated in a firearm seizure. Accordingly, the *Terry* pat framework is inapplicable here.

For all of the foregoing reasons, the Motion to Suppress is not meritorious insofar as Hunter seeks to suppress the firearm found in his waistband during his struggle with Selma police officers as he attempted to flee.

### D. *Legality of Detention and Arrest on November 22.*

Finally, Hunter takes issue with the conduct of Detective Calhoun and Special Agent Perry when they went to Hunter's mother's house to investigate further on November 22. Defendant objects that the officers "did not have reasonable suspicion or probable cause to handcuff Mr. Hunter and take him into custody." (Doc. 16, at 5.) Once again, defendant's argument lacks merit.

As set forth above, Detective Calhoun and Special Agent Perry visited Hunter's mother's house because Hunter's cell phone (to which he had granted consent to search before making bond) revealed text messages in which Hunter had instructed his girlfriend to hide an item from his mother's house, and in which his girlfriend had confirmed doing so. The officers suspected that this item might be another stolen firearm, so they investigated. Upon arrival at Hunter's mother's home, they found that Hunter was present and placed him in handcuffs for less than 15 minutes while they questioned witnesses. They detained Hunter in this manner for officer safety because, at that time, they knew that: (i) Hunter had been arrested in possession of a stolen firearm one day earlier, (ii) Hunter had become physically aggressive with officers attempting to pat him down, (iii) there was reason to believe another stolen firearm (the "item" in the text messages) might be nearby, and (iv) Hunter had previously been involved in a firearm burglary and had been involved in a shooting just a few months earlier.

The Eleventh Circuit has long recognized that "police may take reasonable action, based upon the circumstances, to protect themselves during investigative detentions." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989) (explaining that "[t]he handcuffing of Hastamorir constituted a *Terry* stop, and was a reasonable action designed to provide for the safety of the agents"); *see also United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir.

1985) ("neither handcuffing nor other restraints will *automatically* convert a *Terry* stop into a *de facto* arrest requiring probable cause," and such restraints are subject to a reasonableness analysis); *United States v. Lester*, 2012 WL 2086419, *3 (11th Cir. June 11, 2012) ("Because officers may take reasonable steps to ensure their safety so long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous, an investigatory stop does not ripen into an arrest simply because an officer handcuffs a suspect."). Moreover, it bears emphasis that "the risk of harm to officers is minimized when police officers exercise unquestioned command of the situation." *United States v. Clark*, 337 F.3d 1282, 1288 (11th Cir. 2003) (citations and internal quotation marks omitted) (finding that officer could lawfully order passenger to re-enter vehicle to protect officer's safety, during investigation of driver, despite lack of particularized, reasonable suspicion of criminal activity by passenger); *see also Lewis*, 674 F.3d at 1308 (no violation where officer ordered several individuals to sit down on the ground and show their hands during investigation of another person, because officers could permissibly "control the movements of nearby associates and exercise command over the situation once the officers had reasonable suspicion of criminal activity that warranted further investigation"). "Many courts have recognized that knowledge of the criminal histories … will often be relevant to [an officer's] safety." *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001).

Given the totality of the circumstances known to Detective Calhoun and Special Agent Perry when they arrived at Hunter's mother's house, their decision to place Hunter in handcuffs for a few minutes while they interviewed his mother and girlfriend was a permissible, reasonable measure taken to ensure their safety. Contrary to defendant's apparent position, their act of briefly handcuffing Hunter was not an arrest and did not require probable cause. Moreover, that conduct was a reasonable, appropriate safety measure because they harbored a reasonable belief (based on all facts and circumstances then known to them) that Hunter might be dangerous and might have access to a firearm. The detention of Hunter on November 22, 2013 was not performed in a manner that was disproportionate to the threat to officer safety, and did not violate the Fourth Amendment.

Insofar as Hunter complains that his November 22 arrest was not supported by probable cause, he is again mistaken. Hunter's mother told the officers that she had discovered a pistol behind the shed in her backyard after he was arrested. Hunter's girlfriend told the officers that

she had retrieved the firearm and hid it in her mother's house. Hunter's cell phone records showed that he had initiated and orchestrated his girlfriend's removal and secretion of the weapon. Given the totality of these circumstances, the officers plainly had the requisite probable cause to arrest Hunter on separate charges relating to that second firearm. Furthermore, officers recovered that very firearm from the girlfriend's mother's home after a search to which consent was given. And the firearm was confirmed to have been stolen from the Central Alabama Farmers CO OP on May 2, 2013.

### III. Conclusion.

For all of the foregoing reasons, Hunter's Motion to Suppress and Dismiss (doc. 16) is **denied** in its entirety.

DONE and ORDERED this 25th day of February, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE